UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOHAMMAD M. ISLAM CHOWDHURY,

                Plaintiff,

– against –

DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, ANNA VAYSMAN, *and* JESSE LAUFER,

                Defendants.

**OPINION & ORDER**

24-cv-0182 (ER)

RAMOS, D.J.:

      Mohammad Monirul Islam Chowdhury, proceeding *pro se*, commenced this employment discrimination lawsuit against the Department of Housing Preservation and Development ("HPD"), Anna Vaysman, and Jesse Laufer (collectively, "Defendants"),[1] alleging religious and disability discrimination. Doc. 1 at 2-3. Chowdhury alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the American with Disabilities Act of 1990 ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). *Id*. at 3-4. Chowdhury also alleges First Amendment retaliation. *Id*. at 4. Before the Court is the Defendants' motion to dismiss the Complaint for failure to state a claim. Doc. 19. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

---

[1] Plaintiff, initially, lists the HPD as a defendant in his Complaint. Doc. 1 at 2. Pursuant to Section 396 of the New York City Charter, HPD is not a suable entity. NY City Charter § 396. Although Plaintiff does not list the City of New York ("City") as a defendant, the Defendants include the City of New York as a co-defendant in their motion to dismiss. Doc. 19 at 7.

I. **BACKGROUND**
   A. **Factual Background**

The following facts are taken from Chowdhury's Complaint, which the Court accepts as true for purposes of Defendants' Rule 12(b)(6) motion. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court also considers facts from Chowdhury's opposition, given Chowdhury's *pro se* status, "to the extent that [it is] consistent with the allegations in the complaint." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014) (stating that the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint" for *pro se* litigants); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing he motion").

Chowdhury is a 57-year old male and a practicing Muslim. Doc. 1 at 8. He holds a Bachelors, Masters, and a PhD from the Bangladesh Agricultural University. Doc. 24 at 7. Chowdhury also has poliomyelitis complexities in his right leg,[2] which caused his right leg to be about four inches shorter than his left leg. Doc. 1 at 8. This requires him to wear a special shoe and walk at a slower pace to accommodate his disability. *Id.* Chowdhury worked as an asbestos inspector and investigator in the United States for over three years, which demanded physical labor and analytical abilities. *Id.*

After attending a job fair for the HPD, Chowdhury was interviewed and offered the position of Housing Inspector. *Id.* Starting on May 24, 2021, Chowdhury began a required training period, as the job entails "technical work in the inspection of dwellings and other structures" to enforce City laws. *Id.*

During the training period, Chowdhury would use his lunch breaks on Mondays through Thursdays to pray alone according to his religious duties. *Id.* However, in

---

[2] Poliomyelitis is commonly known as polio. *Polio*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/polio/symptoms-causes/syc-20376512 (last visited Feb. 11, 2025). Long term complications can include "muscle shortening that causes deformed bones or joints." *Id.*

accordance with the Quran, on Fridays, Chowdhury would use his lunch hour to attend communal prayer services at a mosque, which was a ten-minute walk from the HPD. *Id.* Initially, Chowdhury, did not inform Defendants of his religious duties, as he "did not want to be treated differently in the work place." *Id.*

On Chowdhury's first Friday at HPD, May 28, 2021, he returned from his lunch break late, as the prayer service was longer than usual. Doc. 1 at 9. The typical protocol for trainees arriving late from lunch is for the supervisor to direct the trainee to write their name and the amount of time that they were late on a board in the classroom. *Id.* When Chowdhury arrived at work, he apologized and informed his supervisor, Laufer, that he was late due to his religious duties. *Id.* Chowdhury alleges that in response, Laufer "became angry and reprimanded" him, telling him to not be late in the future. *Id.*

After this incident, Chowdhury removed his special shoe while sitting in the classroom. *Id.* According to Chowdhury, the shoe is uncomfortable, and he would occasionally take it off for relief. *Id.* Laufer told Chowdhury, in front of his training cohort, to put his shoe back on, which he did out of fear of losing his job. *Id.*

The following week, June 3, 2021, Zenzile Vialva, an Assistant Commissioner at HPD, gave a lecture about the "Office of Diversity, Equality, and Inclusion/EEO." *Id.* Chowdhury attended the lecture as required for his training. *Id.* After the lecture, Chowdhury talked to Vialva about his tardiness the prior week and expressed his concern that Laufer would not allow him to attend prayer services in the future. *Id.* Vialva took Chowdhury outside of the classroom, gave him a book, and told him that he should call the phone number indicated in the book to complain if he is not allowed to attend services in the future. *Id.*

After the conversation with Vialva, Laufer, who had also attended the lecture, confronted Chowdhury. *Id.* Allegedly, Laufer asked Chowdhury whether he had complained about his "prayer time." *Id.* Laufer's question made Chowdhury

3

uncomfortable, but he responded that he did discuss it with Vialva. *Id.* Laufer then instructed Chowdhury not to complain, and called another female supervisor into the classroom. *Id.* Chowdhury alleges that Laufer and the other supervisor talked about him in a "humiliating manner" in front of at least ten other HPD trainees. *Id.* Chowdhury states that he felt embarrassed in front of his coworkers and worried about his future at HPD. *Id.*

Chowdhury continued to attend training and performed his religious duties, including attending Friday prayers at the mosque during his lunch break. *Id.* On June 23, 2021, two days prior to the end of Chowdhury's training period, he received a call informing him that his employment was terminated effective immediately. *Id.* Later that day, he also received an email from Vaysman, the Acting Assistant Commissioner of Human Resources, with a termination letter, explaining that he had "fail[ed] probation." *Id.* Chowdhury states that he was never informed that his position at HPD was probationary, *id.*, and alleges that if he was aware of his probationary status, he would have tried "to improve or address any [of the Defendant's] alleged issues." Doc. 24 at 2. Chowdhury also alleges that he "performed well during the training period, and was never given a negative performance review." *Id.* at 7. On December 5, 2021, Chowdhury filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging only religious discrimination. Doc. 1 at 9; Doc. 26-1 at 3. He received a Notice of a Right to Sue on October 11, 2023. Doc. 1 at 9.

### B. Procedural History

Chowdhury filed the instant complaint on January 9, 2024, alleging religious and disability discrimination and failure to accommodate in violation of Title VII, the ADA, the NYSHRL, and the NYCHRL. Doc. 1 at 3-4. He also alleges First Amendment retaliation. *Id.* at 4. The Defendants now move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 19.

4

## II.　LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen*, 746 F.3d at 62. The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition to the complaint, the Court may also consider "documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Doe v. New York University*, 2021 WL 1226384, at *10 (S.D.N.Y. 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual mater… 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims… across the line from conceivable to plausible," the complaint must be dismissed." *Id.* at 680 (citing *Twombly*, 550 U.S. at 570).

The same standard continues to apply for *pro se* complaints. *Davis v. Goodwill Industries of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. 2017) (citing *Zapolski v. Federal Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court has an obligation to construe *pro se* complaints liberally and to interpret their claims as "rais[ing] the strongest arguments that they suggest." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d

471, 474 (2d Cir. 2006)). When deciding a motion to dismiss, the Court may also "consider factual allegations made by a *pro se* party in his papers opposing the motion," as long as they are consistent with the complaint. *Walker*, 717 F.3d at 122 n.1; *Ceara*, 68 F. Supp. 3d at 405. Nevertheless, the *pro se* plaintiff is not exempt from complying with the relevant rules of procedural and substantive law. *Triestman,* 470 F.3d at 477 (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### III. DISCUSSION

#### A. HPD is not a suable entity and the individual defendants cannot be subject to a suit under Title VII or the ADA

Section 396 of the New York City Charter provides that lawsuits must be brought against the City of New York instead of a city agency unless otherwise provided by law. For *pro se* plaintiffs, the Court will substitute the plaintiff's claims against the nonsuable agency as against the City of New York. *See Blanton v. City of New York*, 2012 WL 6634177, at *3 (S.D.N.Y. 2012) (substituting the City of New York for claims against the 7th Precinct N.Y.P.D. and 9th Precinct N.Y.P.D.).

Chowdhury brought this lawsuit against HPD and did not list the City of New York as a defendant in his Complaint. Doc. 1 at 2-3. However, Defendants treat the City of New York as a co-defendant in their motion to dismiss. Doc. 19 at 7. Plaintiff also concedes that HPD is not a suable entity and requests the Court to either substitute the City as a defendant or to grant him leave to amend his Complaint. Doc. 24 at 4. Since Chowdhury is *pro se*, the Court shall substitute HPD with the City of New York.

The ADA and Title VII also do not provide individual liability in their respective remedial provisions. *See Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (holding that the ADA does not provide individual liability); *Cayemittes v. City of NY Department of Housing Preservation & Development*, 641 F. Appx. 60, 61-62 (2d Cir. 2016) (affirming the dismissal of plaintiff's Title VII claims, as the statute does not provide individual liability). Since Chowdhury sued individual defendants Vaysman and

6

Laufer under these statutes, the Court dismisses all Title VII and ADA claims against the individual defendants.

### B. Plaintiff failed to exhaust his administrative remedies for his disability discrimination claim

Under Title VII and the ADA, a plaintiff may bring a suit in federal court only after they filed a claim with the EEOC and received a Notice of a Right to Sue. *See* 42 U.S.C. § 2000e-5(e) and (f); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001); *Soules v. Connecticut, Department of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). For the court to consider the alleged discrimination claims, they must have been either explicitly raised or "reasonably related" to claims that were raised in the EEOC process. *Hodges v. Attorney General of the U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (citing *Butts v. City of New York Department of Housing, Preservation & Development*, 990 F.2d 1397, 1401-03 (2d Cir. 1993)). A claim not raised in the EEOC complaint may be "reasonably related" to claims that were raised if: (1) "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) the claim alleges "retaliation by an employer against an employee for filing an EEOC charge;" or (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402-03 (2d Cir. 1993). The first category allows a "loose pleading," recognizing that EEOC charges are often filed by employees without the benefit of counsel. *Kirkland-Hudson v. Mount Vernon City School District*, 665 F. Supp. 3d 412, 438 (S.D.N.Y. 2023) (citing *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)). The inquiry focuses "on the factual allegations made in the EEOC charge itself" and whether they "gave that agency adequate notice to investigate the claims subsequently asserted in federal court." *Kirkland-Hudson*, 665 F. Supp. 3d at 438 (S.D.N.Y. 2023) (quoting *Williams v. N.Y.C. Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006).

Defendants bear the burden of proving Plaintiff's failure to exhaust administrative remedies. *Kane v. Saint Raymond's Roman Catholic Church*, 2015 WL 4270757, at *5 (S.D.N.Y. 2015). Under a motion to dismiss for failure to state a claim, the Court may consider EEOC filings because "they are public documents" and are "integral to Plaintiff's claims." *Kirkland-Hudson*, 665 F. Supp. 3d at 438 (S.D.N.Y. 2023) (citing *Morris v. David Lerner Associates*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)).

While Chowdhury alleges in his opposition to the instant motion that he "detail[ed] his poliomyelitis in his EEOC charge," Chowdhury, in fact, omitted any mention of a disability or poliomyelitis in his actual EEOC charge. Doc 24 at 4; Doc. 26-1 at 2-3. Instead, the EEOC charge states that he was "discriminated and retaliated against on the basis of [his] religion/failure to accommodate, in violation of Title VII." Doc. 26-1 at 3.

Moreover, Chowdhury's disability discrimination claims are not reasonably related to his religious discrimination claims and do not reasonably fall within the scope of the EEOC investigation of his religious discrimination claims. The factual allegations of Chowdhury's disability claims arise out of different circumstances and are unrelated to the facts pertaining to his religious discrimination claims. Simply stated, one would not know from Chowdhury's claim of religious discrimination that he was also disabled. Accordingly, the Court cannot find that the EEOC's investigation of his religious discrimination claims would reasonably have included disability discrimination within its scope.

Courts in the Second Circuit often hold that "claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." *Shands v. Lakeland Central School District*, 2017 WL 1194699, at *4 (S.D.N.Y. 2017). Thus, because Chowdhury fails to explicitly state or reasonably relate his disability discrimination claims to his

8

religious discrimination claims, the disability discrimination claims are dismissed for failing to exhaust his administrative remedies.

### C. Plaintiff does not state a viable First Amendment retaliation claim

Chowdhury alleges that Defendants retaliated against him after he expressed his concerns over his ability to continue attending Friday prayer services. Doc. 1 at 9. To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) their speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Raymond v. City of New York*, 317 F. Supp. 3d 746, 772 (S.D.N.Y. 2018) (citing *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018)). However, in the case of a public employee, a plaintiff must also allege that they spoke "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 401, 418 (2006). In deciding whether the employee's speech addressed a matter of public concern, the Court considers the "content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999) (citing *Connick v. Myers*, 461 U.S. 138, 147-148 and n.7)). The Court specifically focuses on (1) the motive of the speaker and (2) "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id*. (citing *Curtis v. Oklahoma City Public Schools Board of Education*, 147 F.3d 1200, 1212 (10th Cir. 1998)).

In the instant case, the only speech that Chowdhury alleges is his conversation with Vialva and his subsequent talk with Laufer, regarding his concern over attending Friday prayer services. Doc. 1 at 9. As a result of these conversations, Chowdhury alleges that HPD retaliated against him by terminating his employment. *Id*. Based on the Complaint, the Court finds that his speech constitutes a personal grievance rather than a matter of public concern. Chowdhury states that he talked to the Vialva about his religious obligation and his concern that he "would not be allowed to go… pray in the

9

future." *Id*. He also spoke with Laufer about his talk with Vialva concerning his "prayer time." *Id*. Chowdhury does not allege that either of his complaints implicated system-wide discrimination. *See Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir. 1993) (suggesting that a plaintiff complaining to her supervisors with implications of system-wide discrimination would constitute a "matter of public concern). Rather, his conversations with Vialva and Laufer were "personal in nature and generally related to his own situation." *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (holding that a medical resident's complaint about aspects of her employment that negatively affected her, such as her personal dissatisfaction with the performance of other attending physicians and lack of opportunities for individual development, did not implicate matters of public concern). Therefore, because Chowdhury's speech was not a matter of public concern, Chowdhury's First Amendment retaliation claim is dismissed.

### D. Plaintiff states a plausible claim of religious discrimination

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's… religion." 42 U.S.C. § 2000e-2(a)(1). Employers must reasonably accommodate an employee's religious practice unless the employer proves that it would cause "undue hardship" on the employer's business. *See* 42 U.S.C. § 2000e(j). Under Title VII, religious discrimination claims may be brought under two theories: disparate treatment or denial of religious accommodation. *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 (S.D.N.Y. 2021). Although Chowdhury alleges religious discrimination under a failure to accommodate theory, the Court will analyze his claim under both disparate treatment and failure to accommodate, considering Chowdhury's *pro se* status and because Defendants raise defenses in connection with both theories. *See* Doc. 24 at 8-11; Doc. 19 at 11-13.

10

1. *Disparate Treatment*

Under a disparate treatment theory, a plaintiff must allege that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of discrimination. *See Vega v. Hempstead Union Free School District,* 801 F.3d 72, 83 (2d Cir. 2015). Discrimination claims brought under the NYSHRL and NYCHRL are also subject to the same analytical framework. *Mitchell v. New York City Department of Education*, 2022 WL 621956, at *5 (S.D.N.Y. 2022). At the pleading stage, plaintiff must allege either "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87 (2d Cir. 2015). If the plaintiff states a *prima facie* case, then the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the challenged employment decision." *Livingston*, 563 F. Supp. 3d at 233 (citing *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 211 (2d Cir. 2004)).

As a practicing Muslim, Chowdhury is a member of a protected religious class. Doc. 1 at 8; *see Lewis v. New York City Transit Authority*, 12 F. Supp. 3d 418, 439 (E.D.N.Y. 2014) (finding that the Muslim plaintiff was a member of a protected class). He also alleges that he was qualified for the housing inspector position at HPD because he holds advanced educational degrees and worked as an asbestos inspector for three years. Doc. 24 at 7; Doc. 1 at 8. Defendants dispute that Chowdhury was qualified for the position because Chowdhury failed his probation, and he failed to set forth facts demonstrating his qualifications. Doc. 19 at 11; Doc. 25 at 4. Defendants also question the validity of Chowdhury's doctorate, as he only mentions it in his opposition to the motion but not in the Complaint. Doc. 25 at 7, n.1; *see* Doc. 24 at 7. Defendants allege that, "even [if] taken as true," such a doctorate does not show that he was qualified for the position. Doc. 25 at 7, n.1. However, even if he doesn't have a PhD, he has a Masters

11

degree and claims that he performed well during the mandatory training period and "was never given a negative performance review." Doc. 24 at 7. Accordingly, the Court will draw the inference that Chowdhury was at least minimally qualified for the position.

Chowdhury also suffered an adverse employment action when his employment was terminated. Chowdhury attended a Friday prayer service during his lunch break and returned to work late on one occasion. Doc. 1 at 9. He was reprimanded by Laufer, who told Chowdhury not to be late in the future. *Id*. Chowdhury expressed concern over exercising his religious duties to Vialva, and Laufer allegedly confronted Chowdhury for complaining to the Vialva. *Id*. Chowdhury further alleges that Laufer and another supervisor then talked about him in a "humiliating manner" in front of at least ten other HPD trainees. *Id*. Twenty days after this incident, Chowdhury was terminated for "failing probation." *Id*. His termination constitutes an adverse employment action. *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. New York City Human Resources Administration*, 361 F.3d 749, 755 (2d Cir. 2004)) (noting that termination of employment is an example of an adverse employment action).

Moreover, Chowdhury alleges that his termination took place under circumstances that give rise to an inference of discrimination. Such inferences of discrimination may include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009).

Defendants argue that Chowdhury's allegations are "vague and conclusory" and highlight that he does not plead that other employees were treated more favorably. Doc. 19 at 12. Moreover, Defendants assert that Chowdhury failed to "plead any statements

by Defendants that degraded Plaintiff based on his religion." *Id*. Therefore, Defendants conclude that Chowdhury's discrimination claims "stop short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; Doc. 19 at 12. However, Chowdhury alleges that Laufer confronted him for discussing his Friday prayer service with Vialva and that, immediately thereafter, Laufer and another supervisor spoke to him in a "humiliating manner" in front of his fellow trainees. Doc. 1 at 9; *compare with Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 174-75 (2d Cir. 2010) (finding that plaintiffs failed to allege facts supporting a discrimination claim, as plaintiffs simply claimed that "upon information and belief, non-black residents have been granted subsidies and re-certifications while plaintiffs have been denied the same in the same period," thus defendants must have discriminated against them). Chowdhury's allegations concerning the sequence of events leading up to his termination, including Laufer's comments and the lack of negative performance reviews, are sufficient to raise an inference of discrimination, crossing the line from possibility to plausibility. The Court thus finds that Chowdhury has sufficiently alleged a plausible claim of religious discrimination under a disparate treatment theory.

   *2. Failure to Accommodate*

A plaintiff establishes a *prima facie* case of religious discrimination under a failure to accommodate theory by demonstrating that: (1) he has a bona fide religious belief conflicting with an employment requirement, (2) he informed his employer of this belief, and (3) he was disciplined for failing to comply with the employment requirement. *Cagle v. Weill Cornell Medicine*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023).

Chowdhury sufficiently alleged that he has a bona fide religious belief as a practicing Muslim by regularly engaging in his religious duties, such as attending Friday prayer services. Doc. 1 at 8; *see Baker v. The Home Depot*, 445 F.3d 541, 547 (2d Cir. 2006) (finding that "the question of the sincerity of an individual's religious beliefs is

13

inherently within that individual's unique purview"). Chowdhury's attendance at the Friday prayer service can conflict with his employment if the service runs over the allotted time for his lunch break.

Although Chowdhury did not initially inform his employer of this potential conflict, he informed his supervisor, Laufer, of his religious obligation to attend prayer services when explaining the reason for his tardiness on Friday, May 28. *Id*. at 9. After confirming that Chowdhury discussed continuing his attendance at Friday prayer services with Vialva, Laufer allegedly talked about Chowdhury in a "humiliating manner," and Chowdhury was terminated 20 days later, purportedly for failing to comply with the employment requirements. *Id.* Based on these alleged facts, Chowdhury sufficiently establishes a *prima facie* case of religious discrimination claim for failure to accommodate.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court grants the Defendants' motion to dismiss HPD, as the Agency is not a suable entity, and substitutes the City of New York for HPD. The Court also grants the Defendants' motion to dismiss all Title VII and ADA claims against the individual defendants. The Court grants the Defendants' motion to dismiss Chowdhury's First Amendment retaliation claims on the merits and the disability discrimination claims for failing to exhaust administrative remedies. However, the Court denies the Defendants' motion to dismiss Chowdhury's religious discrimination and failure to accommodate claims.

The parties are directed to appear for a telephonic initial pretrial conference on April 15, 2025, at 11:30 AM. The parties are directed to dial (855) 244-8681 and enter access code 2301 087 7354#, and then # when prompted.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 19.

It is SO ORDERED.

Dated:  March 6, 2025
        New York, New York

_____
EDGARDO RAMOS, U.S.D.J.